# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 3:09-CR-396 |
| v. | (JUDGE CAPUTO) |
| BRANDON PIEKARSKY, and DERRICK DONCHAK, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are the Joint Pre-Trial Motions of Defendants Brandon Piekarsky and Derrick Donchak. (Doc. 59.) Defendants' motions request that the charges against them be dismissed, or in the alternative that certain evidence be excluded from trial and that the government be compelled to produce additional discovery. For the reasons discussed below, Defendants' motions will be denied.

## BACKGROUND

The Indictment ("Indict.") alleges the following:

On or about July 12, 2008, at approximately 11:30 p.m., a group of six males including Defendants Derrick Donchak ("Donchak") and Brandon Piekarsky ("Piekarsky"), along with Participant #1 and Participant #2, confronted L.R., a Latino male, in a public park. (Indict. ¶ 3.) The group assaulted L.R. on a public street by striking and kicking him while members of the group yelled racial slurs at L.R. (*Id.* ¶ 3.) After the assault, L.R. lost consciousness and remained comatose until dying on July 14, 2008. (*Id.* ¶ 4.) L.R.'s death was ruled a homicide caused by blunt-force trauma to the head. (*Id.* ¶ 5.)

Donchak, Piekarsky, Participant # 1, and others were stopped by Patrolman Jason Hayes ("Hayes") and Lieutenant William Moyer ("Moyer") of the Shenandoah Police Department while fleeing the scene of the assault. (*Id.* ¶ 6.) Hayes was at all relevant times dating Piekarsky's mother, and knew of all individuals involved in the assault on L.R.. (*Id.* ¶ 12.) Moyer's son played on the same football team as those individuals who assault L.R. (*Id.* ¶ 13.) Piekarsky went with Hayes and Moyer to the scene and described the assault. (*Id.*, Count II, ¶ 6.) Shortly after the assault, several assailants, including Donchak, met at Donchak's home to discuss the assault. (*Id.*, Count II, ¶ 7.) Piekarsky called Donchak and informed him that he had spoken to the police. (*Id.*, Count II, ¶ 8.) Piekarsky then traveled to Donchak's home and agreed with Donchak and others to give a false account of the assault in official statements to the authorities. (*Id.*, Count II, ¶ 9.) The group agreed to provide a false version of the events omitting Piekarsky's kicking L.R. and the racial motivation for the assault. (*Id.*, Count II, ¶ 11.) Donchak later discussed the need to dispose of shoes worn by co-conspirators during the assault of L.R. (*Id.*, Count II, ¶ 13.) On July 13, 2008, Donchak gave false and misleading statements to the authorities about the assault on L.R. (*Id.*, Count II, ¶ 16.) Donchak and Piekarsky disposed of sneakers they wore on the night L.R. was assaulted. (*Id.*, Count II, ¶ 20.) Members of the Shenandoah Police Department, including Chief Matthew Nestor ("Nestor"), Hayes, and Moyer failed to memorialize or record inculpatory statements made by Piekarsky about the attack on L.R. (*Id.*, Count II, ¶ 4.) Nestor was a friend of Piekarsky's mother. (*Id.* ¶ 6.) Nestor, Moyer, and Hayes also knowingly and intentionally filed false and misleading reports about their investigation into the assault on L.R. (*Id.*, Count II, ¶¶ 22-27.)

On December 10, 2009, the Grand Jury charged Defendants Piekarsky and Donchak with intentionally intimidating a person from occupying a dwelling because of their race pursuant to 42 U.S.C. § 3631. The Grand Jury also charged Donchak with two counts of obstruction of justice pursuant to 18 U.S.C. §§ 1519 and 2, and one count of conspiracy to violate 18 U.S.C. § 1519 pursuant to 18 U.S.C. § 371. Defendants filed the present joint pre-trial motions on April 20, 2010. (Doc. 59.) These motions have been briefed by both sides and are now ripe for disposition.

**LEGAL STANDARD**

**I.      MOTION TO DISMISS**

Rule 7(c)(1) requires an indictment to contain "a plain, concise, and written statement of the essential facts constituting the offense charged" and a statement of which statutes the defendant is alleged to have violated. Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 12(b)(3)(B), motions claiming a defect in the indictment must be raised prior to trial. In ruling on a Rule 12(b)(3)(B) motion to dismiss, the court's role is not to determine the sufficiency of the evidence, but to determine whether the allegations in the indictment are sufficient to charge the named offense. *See United States v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson,* 371 U.S. 75, 78-79 (1962)). The trial court should consider only those objections "that are capable of determination without the trial of the general issue." *United States v. Carlos Alberto Diaz-Gomez*, No. CRIM. 88-484-1, 2000 WL 1868394, at *3 (E.D. Pa. 2000) (quoting *United States v. Donsky*, 825 F.2d 746, 751 (3d Cir. 1987)). Because a motion to dismiss should

not be decided based on weigh of the evidence, the allegations in the indictment are assumed to be true. *See Diaz-Gomez*, 2000 WL 1868394, at * 3.

To determine the sufficiency of an indictment, courts utilize a two part test: (1) "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Oliver*, No. 01-3223, 2002 WL 31474532, at *1 (3d Cir. 2002) (quoting *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000)). "No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Bryant*, 556 F.Supp.2d 378, 383 - 84 (D. N.J. 2008) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)). In reviewing an indictment, a court should use "common sense" to determine "whether [a defendant's] conduct, as charged 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute.'" *Id.* at 384 (quoting *Hodge*, 211 F.3d at 76; *United States v. Delle Donna*, 552 F.Supp.2d 475, 483 (D. N.J. 2008)).

## II. MOTION FOR DISCOVERY

There is no constitutional right to discovery in a criminal case. *United States v. Mariani*, 7 F.Supp.2d 556, 561 (M.D. Pa. 1998) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). However, some evidence, courts have reasoned, must be disclosed to protect defendants' due process rights. For instance evidence which is both exculpatory and material must be disclosed by the government. *Id.* (citing *Brady v. Maryland*, 373 U.S. 83,

87 (1963); *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983)). Exculpatory evidence is evidence which "goes to the heart of the defendant's guilt or innocence as well as that which might alter the jury's judgment of the credibility of a crucial prosecution witness." *Giglio v. United States*, 405 U.S. 150, 154 (1972). Exculpatory evidence should be found to be material if it raises reasonable doubt as to the defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 112 (1976). It is within the discretion of the trial court to order pretrial disclosure of *Brady* and *Giglio* material. *Higgs*, 713 F.2d at 44 n.6.

## DISCUSSION

Defendants' joint pre-trial motions include several arguments. First, they argue that the indictment should be dismissed for failure to sufficiently state an offense and because the present prosecution is barred by the doctrine of double jeopardy. Second, they argue that certain evidence should be excluded from trial pursuant to Federal Rules of Evidence 403 and 404. Finally, they argue that the government should be compelled to produce additional discovery. I will address each motion seriatim.

I. **Motions to Dismiss the Indictment**

A. Double Jeopardy

Defendants argue that their prior prosecution in the Schuylkill County Court of Common Pleas arising from this same factual incident bars the present federal prosecution. Protection from multiple criminal prosecutions for the same offense arises from the Fifth Amendment, which states, at relevant part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V. Defendants

5

acknowledge that under the doctrine of dual sovereignty, both the federal and state governments may prosecute a defendant for the same conduct without violating the double jeopardy clause. *United States v. Berry*, 164 F.3d 844, 846 (3d Cir. 1999) (citing *Bartkus v. Illinois*, 359 U.S. 121, 124 (1959)). Instead, Defendants argue that the federal prosecution falls within the narrow "*Bartkus* exception." The Third Circuit Court of Appeals discussed this exception in *Berry*, stating:

> In *Bartkus*, the Supreme Court alluded to the possibility that dual federal and state prosecutions might run afoul of the general rule affirming such prosecutions if one authority was acting as a surrogate for the other, or if the state prosecution was merely "a sham and a cover for a federal prosecution."

*Id.* (citing *Bartkus*, 359 U.S. at 123-24). The court noted that while it had previously recognized the potential existence of such an exception, that it had *never* overturned a second state or federal prosecution on that ground. *Id.* at 847. The *Berry* court also stated that it need not decide whether the exception would bar prosecution, because the facts in that case did not support the conclusion that the federal prosecution was "a sham and a cover" where the state investigation involved no commitment of federal resources and there were separate federal interests in the prosecution. *Id.* Similarly, in the present case the federal prosecution serves divergent interests from the state prosecution, such as the enforcement federal equal protection rights in housing and protecting the integrity of federal criminal investigations. And the fact that cooperation occurred between federal and state authorities does not in itself demonstrate that these authorities acted as surrogates for each other. *United States v. Pungitore*, 910 F.2d 1084, 1106-07 (3d Cir. 1990) (double jeopardy did not bar second prosecution where "there was a considerable amount of federal-state

cooperation"). After reviewing the facts as alleged by the Defendants in their motion, I find that they do not support the conclusion that the prior state prosecution was a sham for the present federal prosecution. Because there are insufficient facts to satisfy the *Bartkus* exception, I need not decide whether the exception would bar the present prosecution.

Alternatively, Defendants argue that the precedents permitting successive criminal prosecutions by separate sovereigns should be re-considered. Defendants cite to the Third Circuit Court of Appeals decision in *United States v. Wilson*, 413 F.3d 382 (3d Cir. 2005), arguing that it illustrates a willingness to reverse the doctrine of dual sovereignty. *Id.* at 389. While the *Wilson* court noted its concerns with the doctrine of dual sovereignty in dicta, ultimately it held that double jeopardy did not bar the subsequent prosecution. *Id.* at 390. The court also stated "we do not believe that we are the proper forum to overturn a legal directive from the Supreme Court." *Id.* (quoting *Grimes*, 641 F.2d at 104). Likewise, this Court is not the proper forum to reverse more than eighty (80) years of Supreme Court precedent permitting subsequent prosecution by separate sovereign without violating the double jeopardy clause. *See Westfall v. United States*, 274 U.S. 256, 258 (1927) (the proposition that the state and federal governments may both punish the same conduct "is too plain to need more than statement"). Defendants' motion to dismiss on grounds of double jeopardy will be denied.

B. 42 U.S.C. § 3631 (Count I)

Defendants next argue that the indictment fails to sufficiently allege a violation of 42 U.S.C. § 3631. Section 3631 is part of the Fair Housing Act and states at relevant part:

> Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with–
>
> > (a) any person because of his race, color, . . . or national origin and because he is or has been selling, purchasing, renting, financing, occupying, or contracting or negotiating for the sale, purchase, rental, financing or occupation of any dwelling. . . .
>
> shall be fined under Title 18 or imprisoned not more than one year, or both; . . . and if death results from the acts committed in violation of this section . . . shall be fined under Title 18 or imprisoned for any term of years or for life, or both.

42 U.S.C. § 3631(a). Defendants argue that the indictment is insufficient because it fails to allege that they knew L.R. occupied a dwelling in Shenandoah. Government argues that it need not allege knowledge of occupancy, and that even if it did that the indictment satisfies such a requirement when it alleges that Defendants intended to intimidate other Latinos from living or staying anywhere in Shenandoah. The indictment clearly sets forth the elements of the offense, along with factual details such as the Defendants' alleged statements that L.R. could "[t]ell [his] fucking Mexican friends to get the fuck out of Shenandoah." (Indict. ¶ 3.) I find that the allegations relating to the charge under § 3631 sufficiently provide Defendants with knowledge of "what they must be prepared to meet" at trial and to utilize results of the present prosecution for purposes of double jeopardy. *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000). Defendants' motion to dismiss Count I for failure to allege an offense will be denied.

### C. 18 U.S.C. §§ 371, 1519, and 2 (Counts II, III, and IV)

Donchak is also charged with obstruction of justice under 18 U.S.C. §1519 and conspiracy to violate §1519 under 18 U.S.C. §371. Donchak's sole argument for dismissal

of these counts is that the indictment does not sufficiently allege an offense under § 1519. Chapter 73 of Title 18 of the United States Code deals with criminal liability for obstruction of justice. §1519 of that chapter provides:

> [w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. §1519. Defendants argue that §1519 requires a nexus between the alleged obstructive action and some matter within the jurisdiction of the United States. This Court recently considered whether § 1519 has a nexus requirement similar to the other obstruction statutes found in the same chapter, 18 U.S.C. §§1503 and 1512(b)(2). *United States v. Hayes*, No. 3:09-cr-397, 2010 WL 2696894, at *3-6 (M.D. Pa. July 7, 2010). In *Hayes*, this Court held that to prove a violation of § 1519 the government must establish a nexus between the defendant's alleged conduct and the federal investigation. *Id.* at *6. The government argues that § 1519 was not intended to have a nexus requirement, citing to the legislative history of § 1519, but this exact argument was considered and rejected in *Hayes*. *Id.* at *6. I see no reason to reconsider this Court's prior opinion, therefore, I find that to prove a violation of § 1519, the government must establish a nexus between Donchak's allegedly obstructive conduct and the federal investigation.

Defendants next argue that because § 1519 has a nexus requirement, the indictment does not sufficiently allege a violation of § 1519 because no nexus is alleged. This Court

9

also considered this issue in *Hayes*, and held that like 18 U.S.C. §§1503 and 1512(b)(2), § 1519's nexus requirement need not be alleged in the indictment. *Id.* at *8-9. I see no reason to reconsider this holding. Because the indictment need not allege a nexus to sufficiently state a violation under § 1519, and because Donchak points to no other defects in the allegations in the indictment, I find that the indictment sufficiently alleges violations of § 1519. Donchak's motion to dismiss Counts II through IV for failure to state an offense will be denied.

## II.     Motions in Limine

Defendants argue that evidence related to racial animus should be excluded from trial because it would be prejudicial to the Defendants. First, Defendants ask that any evidence relating to interaction between a group of white males, including Donchak, and two hispanic males on March 20, 2008, be excluded. (Br. in Supp. 14, Doc. 60.) This alleged incident involved the use of racial slurs and a fight that broke out between the men. (*Id.*) Second, Defendants ask that any evidence of racial slurs used by Piekarsky on the date of the assault with L.R., or any statements by Donchak or others in the March 20, 2008, incident be excluded. Third, Defendants request that any reference to the lyrics of the song "The White Man Marches On" allegedly played publicly by Donchak the summer prior to the assault on L.R. be excluded. Defendants argue that the probative value of each piece of evidence is substantially outweighed by the prejudicial impact, and thus permitting its admission would violate Federal Rule of Evidence 403. Defendants also argue that allowing this evidence would impermissibly permit the use of character evidence of other crimes, wrongs, or acts under Rule 404(b). The government argues that this evidence is highly

probative of Defendants' intent to intimidate others not to occupy dwellings in Shenandoah as a result of their race. I agree that this evidence does not violate Federal Rule of Evidence 404(b) because it is relevant to the Defendants' intent during the assault, an element of § 3631. As to weighing the probative value against the potential for prejudice, making such a determination in a vacuum is difficult. But because under Federal Rule of Criminal Procedure 12(d) this Court "must decide every pretrial motion before trial unless it finds good cause to defer a ruling," I find that based upon the present record the probative value is not substantially outweighed by the risk of prejudice. Fed. R. Evid. 403. Defendants' motion will, however, be denied without prejudice so that Defendants may raise this issue again, if appropriate, during the course of the trial.

### III.     Motions to Compel

Defendants also request that the government be compelled to provide further discovery. As noted above, there is no constitutional right to discovery in a criminal case. *United States v. Mariani*, 7 F.Supp.2d 556, 561 (M.D. Pa. 1998) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). Instead, discovery is limited to those areas listed in the Federal Rules of Criminal Procedure. First, Defendants seek a number of items relating to interactions between the federal and state authorities for purposes of advancing their double jeopardy argument discussed above. *See supra* Part I.A. Their request includes: (1) all written communications between agents of the Commonwealth of Pennsylvania and agents of the United States; (2) a list of all witnesses interviewed and their statements taken prior to the conclusion of the state trial on May 1, 2009; (3) all proffer or immunity agreements entered into by the United States prior to May 1, 2009; (4) a list of all witnesses who testified

11

before a federal grand jury before May 1, 2009 and transcripts of their testimony; (5) all other investigative reports prepared by agents of the United States prior to May 1, 2009 and a list of those given to state authorities. Second, Defendants seek additional material relating to the March 20, 2008, incident involving Donchak.

Defendants argue that these materials are discoverable under Federal Rules of Criminal Procedure 16 and 26.2. Federal Rule of Criminal Procedure 16(a) explicitly lists the items which are discoverable from the government, and none of these subsections permit the discovery of the information sought. I disagree. The only potentially relevant portions of Rule 16 are Rule 16(a)(1)(E) permitting discovery of documents and objects, but only those *obtained from* the defendant, and Rule 16(a)(1)(F) permitting discovery of reports of examinations of *physical or mental examination or scientific tests*. This rule does not authorize discovery of the government's reports, communications, and similar investigation documents. Furthermore, information such as grand jury transcripts are explicitly *excluded* from Rule 16. Fed. R. Evid. 16(a)(3). And while Rule 26.2 requires the production of witness statements, it does so only "[a]fter a witness other than the defendant has testified on direct examination." Fed. R. Crim. P. 26.2(a). Neither Federal Rules of Evidence 16 nor 26.2 authorize the discovery requested at this stage of the proceedings. And contrary to Defendants' assertions that they will be "ambushed," at trial without further evidence relating to the March 20, 2008, incident, the discussion above clearly demonstrates that Defendants have information relating to that incident. Furthermore, Federal Rule of Evidence 404(b) only requires the prosecution to provide a defendant with "reasonably notice in advance of trial . . . of the general nature of any such evidence it intends to introduce." Fed. R. Evid. 404(b). This threshold has been met here. Therefore, Defendants' motion to compel the discovery

12

of these materials will be denied.

## **CONCLUSION**

For the reasons stated above, Defendants' motions will be denied. Specifically, Defendants' motion to dismiss all charges for violations of the double jeopardy clause will be denied because the dual sovereignty doctrine permits both the federal and state authorities to prosecute the Defendants relating to the same conduct. Defendants' motions to dismiss the charges due to insufficiencies in the indictment will be denied because the indictment sufficiently alleges violations of 42 U.S.C. § 3631, and 18 U.S.C. §§ 371, 1519, and 2. Defendants' motion to exclude evidence relating to racial animus will be denied because the admission of such evidence does not violate Federal Rules of Evidence 403 and 404(b). Finally, Defendants' motion to compel production of additional discovery materials from the government will be denied because these requests are beyond the scope of discovery authorized by Federal Rules of Criminal Procedure 16 and 26.2.

An appropriate order follows.

| | |
|---|---|
|   August 11, 2010   <br> Date |  /s/ A. Richard Caputo    <br> A. Richard Caputo <br> United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 3:09-CR-396 |
| v. | (JUDGE CAPUTO) |
| BRANDON PIEKARSKY, and DERRICK DONCHAK, | |
| Defendants. | |

**ORDER**

**NOW**, this  11th  day of August, 2010, **IT IS HEREBY ORDERED THAT** Defendants Brandon Piekarsky and Derrick Donchak's Joint Pre-trial Motions (Doc. 59) are **DENIED**.

                                                         /s/ A. Richard Caputo
                                                        A. Richard Caputo
                                                        United States District Judge